Our third case for this morning is Dan Davies v. Karlen Benbenek. We'll give just a minute for people to get settled. Mr. Robertson. Good morning, Your Honor. I've got a little bit of a different type of case than the first two for you, something a little bit more concrete, more centered in Chicago. The plaintiff here is asking this court to reverse the district court's entry of judgment following a jury trial based on two evidentiary errors that occurred below. One, the admission of a prior lawsuit brought by the plaintiff against the Chicago Police Department that was successful. And the second, the admission of the fact that certain items were recovered, contraband items were recovered during the search that led up to the injury to the plaintiff. So let me ask you about this first one because there are two things about it that I would like some discussion on. One of them is the way this prior lawsuit came up. I could imagine a situation, not this case, where the defendant wants to introduce evidence that the plaintiff had filed a prior lawsuit against a Chicago police officer. Of course, it's a matter of public record. That sort of thing could happen. And it seems to me at that point you would certainly have a serious 404B discussion and maybe it does come in, maybe it doesn't come in, but that's scenario number one. Scenario number two is this case where it seems to be Mr. Davies himself who's shouting out at the time of this incident that he's filed a lawsuit before and he knows how to do it. And so it's a more contemporaneous thing. So I wonder whether we're really analyzing it properly to think of it as a 404B kind of situation as opposed to just part of the chaos that leads to this incident which he either is pulled out of or falls out of the wheelchair, the jury thought fell. So that's one thing. The other is, I mean, obviously we've got harmless error concerns to think about. So maybe I'll just ask you to focus on the first for now. Okay. Well, I appreciate the direction, Your Honor. I don't think it makes a difference at all. And I think that Judge Gottschall below kind of adopted the rationale of, well, it came out of his mouth, ergo it should come in. But why not since he's shouting this? Oh, and the other, I keep forgetting the other point I wanted to make. Anyway, he's yelling about this. And so why isn't that something that can come in? Well, it's completely irrelevant, and it's completely prejudicial to the jury and the evidence in this case. Oh, I know. He also says in all of the evidences that he won. So why does this support an inference that it was a frivolous or bad faith lawsuit if he won it? Why would the jury think that? Well, the only way that, that's the only conclusion the jury really could come to in the context that it was. Didn't they say he won? Right. Well, if I may, Your Honor, the fact that he also made his money that way. The key issue in this case, as was presented to the jury, was whether Dan Davies was punched after making an inappropriate comment to an officer and goes out of his wheelchair and breaks his leg, or two, whether he vaults himself, he's a paraplegic, out of the chair and breaks his own leg in an effort to get monetary gain. That's clearly the issue. That's the way it broke down. That's what the jury was presented. Could I just say, though, in light of the other evidence, the jury might have thought that he pushed himself out of the wheelchair just thinking that he was going to get bruised, but he wasn't appreciating that he's got osteoporosis because of his paraplegic condition. There's some medical testimony to that effect. So he may not have realized that he was as fragile as he was and that the femur was going to break. I'm not positive, but I think that there was evidence that he did know that, Your Honor. But I would not want to mislead the court. I'd ask the court to check that, or we can file a supplemental letter. But I believe there was evidence that he knew that. But regardless, the idea that someone who is in a medically-compromised position for 20-some-odd years would wind up risking themselves a potential injury because he was merely upset just strains credulity. Now, what you have here is, and I want to get back to the core of this, the idea of this suit. The jury's only potential inference, and I know you disagree with me on this, is that it was a fraudulent suit. They were given it in a vacuum. They don't know anything. They know that Mr. Davies was saying, I want to sue, I want to sue, videotape this, so forth and so on. He's presented as a litigious individual. There's no need to bring in a prior suit. I would love to bring in every prior suit of every Chicago Police Department defendant under the theory of, oh, you know what? They know. They know the litigation process. Oh, they know. You know what? They could get sued for monetary damages. You know what? That gives them a motive to lie. Let me bring it in in every single case. And in every single case, I can guarantee you, that would never be allowed. And that's exactly what happened in this case in the reverse. You know, there are very few classes of people, plaintiff's attorneys and then plaintiffs, that people have kind of a natural reaction, like, oh, he's here looking for money. And, you know, overcoming that is tough. And what this case did was allowing this prior suit to come in, and that he won. And the fact that the city kept getting into that, even though the judge said, don't get into the fact that he won. I mean, you're presenting them with a case of, this is a con man. This is the kind of guy who steps in front of the CTA bus. But why? I mean, again, I could imagine all of those arguments being great arguments for keeping it out if it hadn't been part of the arrest scene. But you're saying that, you know, some of the things he yells during the course of this encounter with the police that afternoon are inadmissible, and some of them might be admissible. You know, get out of my apartment or whatever. Why? I think there's a huge distinction between what was said about what was going on then and what concerned the prior inappropriate material, the lawsuit. And you think that we can't, that the trial court was wrong to think that the, quote, what was going on then was in part described by this allusion he made to the earlier suit. Well, I think that the fact that he made the allusion to the earlier suit is contested. I would say that. I would say that. We have to assume that it happened, though, for these purposes. Well, I think that there's certainly evidence in the record. I understand, Judge Hamilton, your point, the fact that that was never put in any police report. Even if that allusion was made, the fact that something comes out of a party's mouth doesn't necessarily make that admissible. 403, 404 still apply, and you still have to perform that type of analysis. So then I would ask you, are you, if, as I'm thinking, 404 isn't really the right framework and we're under 403, then we're reviewing on a pretty generous abuse of discretion standard for the way the 403 balance goes. I don't want to abrogate 404. I think that's a very strong argument. I think if you look at the case law under 404, it specifically says unless there's proof that the prior lawsuit was fraudulent, and in this case it wasn't only not fraudulent, it was settled for a substantial amount of money. In addition, it was a completely different type of case. It was a traffic stop. And what happened in this case is it's presented to the jury in a complete vacuum. And that's how he makes his money. I guess I share a lot of the concerns that have already been raised. I'm not quite sure why you don't embrace the fact that, yeah, I was wrong by the city before and I know how to stand up for my rights and, in fact, provide a little bit of the detail. I understand you chose not to do that, but I'm troubled by the idea that the district judge has to slice and dice the evidence of the core event here and say you're not allowed to talk about what this comment was and you are allowed to talk about that comment and so forth. The vacuum you're talking about is one created by your own strategy. Well, I would disagree with that. Briefly, to your point, I think district court judges slice and dice incidents all the time. That's what they have to do in dealing with an administrator. And they have enormous discretion in doing that. Right. And there are very few, if any, instances where a prior lawsuit involving and the result would be relevant in any way, particularly this one. No, but the excited comments of the central character in the incident about motivations, about goals,  I want to take that point to what your earlier point was. Why not embrace the inference that he's been wrong before and embrace that and know how to stand up for his rights? One, I think it would be a completely improper inference in the sense that we're dealing with different officers, a completely different incident, and it would require us to bring in that entire prior lawsuit and present that to the jury. You could do it in a few sentences. Well, I think that either way it would be completely collateral. But in that situation, the jury was presented with this case as this is the way he makes his money. And when you put it in the context, and this is why it's so important, and this goes to the harmless error concerns you raised, Your Honor, this was the lens, this was the rubric, this was the framework, this is how it was colored. Whether he vaults himself out of his chair to intentionally injure himself in order to get money, which is the police theory, Chicago theory, or whether he was punched and went out. It goes to his credibility. It goes to the core issue. And what we have here is a tainted inference, one that never should have been allowed in. Any prior lawsuit should have been completely excluded, let alone the fact that he won the prior lawsuit, and that's how he made his money. Now, the jury, you know, it's interesting. The jury came up with and asked on their own about the collateral source rule. They came back one day, not during deliberations, but in between days, and said, hey, did Medicaid pay for all this? They obviously were aware that Mr. Davies was of lower income, that Mr. Davies did not pay for this, and they're asking that type of question. I mean, that certainly plays into this idea that he is some type of con man, and that's the picture they were allowed to portray. Sergeant Lorman comes in. Could you stay close to the microphone? Oh, I'm sorry, Your Honor. That's what we're using to record the argument. I'm sorry. I have a tendency to go to the right for some reason. But that's another thing that Sergeant Lorman comes in, and one of the sergeants who comes in, and he claims the comment he makes to the plaintiff as he's laying on the ground is, oh, you broke your leg? I thought you were paralyzed. It doesn't hurt. You know, everything is consistent with that theory that he is somehow faking this injury or had intentionally caused the injury in order to get money. Can I ask a question, counsel? Why didn't you just ask for a mistrial? Judge, I think that I wasn't counsel below. I'm not trying to dump it on my associates. I think that the decision to ask for a mistrial is one that is one he would have made only as a matter of last resort. There's a substantial amount of... Right, but that's what you're asking us to do. You're telling us today, in essence, then, that the district judge should have granted a mistrial, right? Well, I think never should have let the evidence in to begin with. And then, especially when it came out repeatedly that Mr. Davies had won and made his money that way, then I think that the court did what it could in terms of sustaining the objection, directing it to be stricken. Was that repeated? I thought there was some question about how many times that was brought up at the trial. It comes up in Officer Walensky's testimony, and it comes up a couple times in a row there. There's an extensive sidebar on it. The jury doesn't hear the sidebar. But the trial judge was not that clear about it, at least as I read the transcript, about what could come in and what could stay out. But she strikes it, they move on. There's a very brief allusion in the closing argument to it. Well, I think in the closing argument, the repeated states of threats to sue, threats to sue, threats to sue... That's okay, right? That's okay, but what happens is when you set it up with the prior lawsuit, set him up as a litigious individual, set him up as that's how he makes his money, what you're doing is you're ringing that bell each time. And the whole thing was done with, is the plaintiff credible? That's their entire closing argument. And what they did is they made him incredible by letting in improper evidence concerning this prior lawsuit. So I think that in terms of... It's done with Officer Walensky, and then you say it wasn't clear. The judge said... The district court judge disagreed with you and said, I can't be any more clear than that. I understand what you just told my predecessor. But then when it comes up to Officer Benbenek, they go directly back to it, directly back to it, after the judge says, I can't be any more clear. No result comes in. They directly go to that, and it's set. So I see I'm... You have a minute, so if you'd like to sit down and save a bit, that would be fine. Thank you, Your Honor. Thank you. Mr. Collins. May it please the court. I'd like to address the evidence regarding the prior lawsuit. With respect to the items, the evidence regarding the items that were recovered in the home, unless the court has any questions on that issue, we rest on our breathes. But with respect to the prior lawsuit, the district court properly admitted this testimony because it was relevant to show that Mr. Davies had experience using the legal process. Why doesn't that just translate into he has a propensity to sue whoever he can get his hands on? It's different in that it doesn't speak to any sort of character trait. It's solely that he has this experience as a litigant before. Why is that relevant at all, that he's an experienced litigant? I mean, the Attorney General of the United States is an experienced litigant, too. She's in every immigration case. But I don't see why. I mean, obviously, under Gomez, you've got to have relevance before you have anything else. And the question whether he falls out of his wheelchair or whether he's pulled out doesn't seem to me to be very much tied to whether he sued his landlord once upon a time or whether he sued the Chicago police for a strip search after a traffic stop or anything else. How does it even get past 401? Your Honor, it's relevant in that it speaks to his motive for acting in the way that the defendants submitted that he did during the interaction in question. Counsel, if I understand what you're telling us, it is that this evidence should come in even if there was no testimony about Mr. Davies raising the issue at the time. Is that what you're arguing? Raising the issue at the time as in? As in saying, I've done this. I forgot the exact words, but I've done this before. I've sued before. That's how I make my money. Right. That's correct. So our theory is that Mr. Davies acted consistent with the motive to generate a lawsuit. And so the fact that he had previously sued showed that he had experience. All right. Let me try. You're not following my question here. The question is, if what you're saying is this evidence appropriately came in because the officers were testifying about what he said in the midst of this rather chaotic scene, and it's part of the relevant events, it reflects on his motives, et cetera, I understand that argument. If what you're saying is even without that testimony, we're allowed to bring in testimony about this prior lawsuit because we think it shows his motive, which sounds to me like propensity to sue the city, that's a very different question. That's the one much closer to the Second Circuit and Judge Oaks' opinion for the Second Circuit that was discussed in the briefs. Which is it that you're arguing? It's a little bit of both, Your Honor. The fact that Mr. Davies said these words during the time in question. Do you think it's fair then for plaintiffs in such cases to bring out the defendant officer's prior litigation experience and civilian complaint experience? It's not clear to me how that type of evidence would be relevant to any issue in the case. That sounds an awful lot like different rules for goose and gander to me that you're advocating. Well, in this particular case, we have a defense theory that Mr. Davies acted consistent with this particular motive. And in that sense, what we have here is similar to the Boyd case, which is the Ninth Circuit case we cite in our brief, where the defense submitted a theory of suicide by cop and was allowed to present evidence that the decedent had previously sued because it showed that that person had experience bringing claims against police officers and knew that he could get damages from such a lawsuit. And we have a similar defense theory and similar evidence here. In addition to that, though, the evidence would— But that proves too much. Anytime you're a plaintiff and you bring a lawsuit for damages, you could get money from the lawsuit. So I just don't see the limiting principle at all, and I'm surprised that you think we even need to reach the more general question on the facts of this case unless—I mean, I don't know. I still haven't heard why it's relevant to anything if it were just past history. Suppose he didn't say a word during the whole incident, and your position is it still comes in as something, as his propensity to bring lawsuits against the city of Chicago to get money, but that's too much. You're correct, Your Honor. We would never argue that it's admissible because it would show any kind of propensity. Rule 404 is clear that that's— And I'm not sure that this complies with what we were trying very hard to describe in Gomez about what's the difference between propensity on the one hand, not permitted by 404B, and modus operandi or motive or specific intent or the various other things that you can bring in. I just don't see how this tells us why he's going to hurl himself out of the wheelchair. Well, motive is a permissible use under Rule 404B, of course, and this evidence regarding the prior lawsuit shows that he has experience in these types of claims. But only experience, so he likes to bring lawsuits to get money. Respectfully, that's not our submission, that he likes to— I just don't—I know you haven't phrased it that way, but I cannot for the life of me figure out why that isn't the essence of what you're saying. Other than the fact that he shouts all of this in the middle of the melee, which puts a whole different spin on this case. It does add to the probative value of the statement we submit. Or maybe the admissibility. That too, under Rule 403, of course. But our submission is that the experience with the prior lawsuit shows, for example, that he knows how to retain a lawyer. He knows what the litigation process involves. So that brings in every Chicago police officer's priors with litigation, too. They know how to beat the rap. They were sued 25 times, and they were found innocent, some other number. We respectfully disagree, because that type of evidence would not show— It's relevant to credibility, isn't it? It's on the same kind of theory. Well, our theory is a bit different here. We are trying to explain Mr. Davies' motive for acting in the way that he did during the time in question. It's not an attack on his credibility by itself. It's that he—why did he do what he did? And this case does immediately present some unusual circumstances. The defense had a theory that Mr. Davies pushed himself out of his wheelchair, and the defense was entitled to explain to the jury what his motive for doing that would have been. So for that reason, the evidence had permissible use under Rule 404. It did not—furthermore, it did not— Suppose he had once upon a time sued an employer for race discrimination. Would that come in? Your Honor, there the probative value would probably be less, in that it would be a different type of claim against a different type of defendant. All right, so suppose he sued the county sheriff's department for mistreatment in the jail. We'll just assume he spent some time in the Cook County Jail at some point, and he brings in inhumane conditions in the jail case. Does that come in? I believe that would be certainly a more similar type of lawsuit, such that it adds to the probative value of that evidence. But, of course, it would be at the discretion of the district court judge in any event to balance the probative value versus the risk of unfair prejudice. And furthermore, the risk of unfair prejudice here was nonexistent because the evidence only came in in the form of the officer's testimony about Mr. Davey's own words during the time in question. Well, that's different, but I don't know that at a broader level we can say so confidently that this is harmless, although there is some question about how well that was developed in his briefs. But the jury was being asked to believe something quite counterintuitive, that a paraplegic would somehow vault himself out of his wheelchair with such force as to break his femur, the biggest bone in the body. And, you know, that's asking the jury to believe that some very strange behavior took place. And the jury might be disinclined to believe that unless there was some reason to override normal human behavior. And we would agree with that. And beyond that... So it's central, in other words. If it came in in error, it probably made a difference to the verdict. I mean, I understand you don't think it came in in error, so that was fine for the verdict. But if it came in mistakenly, then it almost certainly affected the verdict. I don't feel confident saying almost certainly, Your Honor. It's hard to get inside the mind of the jury in that regard. But with respect to the risk of unfair prejudice, Mr. Davies submits a theory that this prior lawsuit made him seem like a fraudster or a con artist. But there is simply no basis in the record for the jury to draw that conclusion based on the evidence that it heard. It heard that Mr. Davies had previously sued. Two officers also testified that Mr. Davies had gotten money out of those lawsuits. The district court struck that testimony immediately. And there's no reason to think that the jury could not have followed that instruction. Beyond that, to the extent that the jury did consider the outcome of the prior lawsuit, the fact that it was apparently successful in no way suggests that Mr. Davies has a propensity to commit fraud by bringing fake lawsuits. So the propensity inference that Mr. Davies thinks took place here just did not exist. Beyond that, any error allowing this testimony to be made was harmless because Mr. Davies has never disputed, did not try to keep out, testimony that he prospectively threatened to sue. And so he now complains that the testimony about the prior lawsuit made him seem claim-minded. But the prospective threat to sue did that anyway. And so the jury would have reached the same conclusion regardless. And if the court has any other questions, for these reasons, the judgment should be affirmed. All right. Thank you very much. So you have a minute, Mr. Robertson. This idea that it's harmless error when you have a situation that their sole justification for admitting this evidence is inherent in every single lawsuit brought by any plaintiff, that they're looking for money and that they are in some way biased because of that. There's absolutely no justification for that. The credibility in this case was at the core of this case. You have that with the second issue as well. You have an army of sworn police officers on one side and just Dan Davies on the other. The difference between the prior lawsuit and his threat to sue in this case is this. Regardless of whether he's screaming 10, 15 times, I'm going to sue, I'm going to sue, that's inherent in the lawsuit. The jury knows that because he's sitting at the plaintiff's table. When you take it into the second realm, you know that there is an inference of litigiousness. The other cases that decide this, the Mathis case, the Outley case, those kind of cases, the only ones where they say that it's inadmissible or would be admissible to get in, are those cases where it's an, oh, I'm sorry, may I just finish this thought real quick? Finish your thought. Are those cases with a huge modus operandi or some type of indication of fraud because that's the only way it can be relevant and that's just not simply present here. The Boyd case is completely different because it involves expert testimony and you had the rules and the reliability of Dawbert to guard against this type of base vacuumless inference. Okay. Thank you very much. Thank you very much. Thanks to both counsel.